**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EDISON COATINGS, INC., | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| FREEDOM CEMENT LLC, and | : |
| STONE & LIME IMPORTS, INC., | : |
|  | : |
| Defendants. | : |



JURY TRIAL DEMANDED

## VERIFIED COMPLAINT FOR
## TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

PLAINTIFF EDISON COATINGS, INC. (hereinafter, "Edison Coatings," or the "Plaintiff") by its attorneys, THE GIOCONDA LAW GROUP PLLC, for its causes of action against FREEDOM CEMENT LLC, (hereinafter, "Freedom Cement") and STONE & LIME IMPORTS, INC. (hereinafter "Stone & Lime") (collectively "the "Defendants"), alleges upon information and belief as follows, except as to allegations concerning the Plaintiff or its counsel, which are made upon personal knowledge:

### NATURE OF THE ACTION

1.     This is an action for trademark infringement and unfair competition brought pursuant to Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); and related causes of action under Sections 349, 350, and 360-l of the New York General Business Law, and for violations of New York State common law.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) for the claims arising out of the violations of Sections 32 and Section 43 of the Lanham Act, has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for the claims arising out of Sections 349, 350, and 360-1 of the New York Business Law, and all other claims arising under the common law of the State of New York; and has jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367 for the claims under the common law of unfair competition.

3.     This Court has personal jurisdiction over the Defendants because the products that are the subject of this action were, and continue to be, sold and/or offered for sale to consumers in New York, including in this Judicial District.  On information and belief, the Defendants regularly and systematically do business throughout New York State, and in this Judicial District.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events giving rise to the claims pleaded herein occurred in this Judicial District.

5.     One of the Defendants' websites, which is fully accessible and visible to consumers from New York and this Judicial District, *http://www.HistoricMortars.com,* describes the Defendants as having "mines/quarries in Rosendale NY."

6.     Further, on or about February 5, 2015, the Defendants co-sponsored the Association for Preservation Technology Northeast Chapter ("APT-NE") Annual Symposium at St. Bartholomew's Church in this Judicial District.  The APT-NE is located at Radio City Station, New York, NY 10101, in this Judicial District.

7.      Defendant Freedom Cement LLC contributed to the "Granite Level" sponsorship of APT-NE and that group's Symposium, reflecting that the Defendant paid at least $2,500 to APT-NE to participate in this Symposium located in this Judicial District.

8.      During that Symposium in New York City, several potential purchasers mistakenly believed that Defendant Freedom Cement LLC was the owner and/or source of Edison Coatings' federally registered trademark ROSENDALE NATURAL CEMENT PRODUCTS$^{®}$.

9.      The Defendants regularly solicit business from customers located in New York and this Judicial District.

10.      The Defendants also regularly sell their products to consumers located in New York and this Judicial District.

11.      For example, the Defendants recently sold a substantial amount of natural cement product(s) to contractor(s) currently performing renovation work on the High Bridge over the Harlem River, located in this Judicial District.

## PARTIES

### Plaintiff Edison Coatings, Inc.

12.      Plaintiff Edison Coatings, Inc. is an active domestic corporation in good standing, organized under the laws of the State of Connecticut.

13.      Edison Coating's principal place of business is 3 Northwest Drive, Plainville, Connecticut 06062, Telephone: (860) 747-2220, Fax: (860) 747-2280.

14.      Edison Coatings offers a wide variety of cement and masonry materials on a factory-direct basis to contractors, institutions, government agencies, property

managers, corporations, conservators and other commercial, industrial and professional organizations located in New York State, in this Judicial District and elsewhere.

15.     The Plaintiff is the registrant and/or owner of the following federally registered trademark (the "Rosendale Trademark"):

| U.S. Registration Number | Trademark | Registration Date | International Classes |
|---|---|---|---|
| 1,016,032 | **ROSENDALE NATURAL CEMENT PRODUCTS** | June 30, 2009; Section 8 Declaration Accepted on July 25, 2014 | IC 19 (U.S. Classes 1,12, 33 and 50) for "Natural Cement, a Hydraulic Cement Material, Namely Mortars, Concretes, Stucco, Whitewash Concrete Grouts" |

16.     The federal registration for the Rosendale Trademark is in full force and effect.  A copy of the Rosendale Trademark's registration certificate is attached as Exhibit 1.

17.     A copy of the Notice of Acceptance of the Section 8 Affidavit demonstrating the Plaintiff's continuous use in commerce of the Rosendale Trademark since 2004 is attached at Exhibit 2.

18.     The Plaintiff has used the Rosendale Trademark on and in connection with the sale and advertising of a variety of goods since as early as October 1, 2004.

19.     For example, the Plaintiff uses the logo incorporating the Rosendale Trademark, depicted in Figure 1 on its website located at

*http://www.RosendaleCement.net:*



**FIG. 1**

20.     The Plaintiff's Rosendale Trademark has been applied to goods since as early as October 1, 2004.  True and accurate specimens of such use in commerce are depicted below in Figures 2 and 3:



**FIG. 2**



**FIG. 3**

21.     Additional examples of the Plaintiff's use of the Rosendale Trademark in commerce are attached at Exhibit 3.

22.     Through extensive advertising and promotion, the Rosendale Trademark has come to be known as a distinctive source identifier for the Plaintiff's high quality natural cement products.

23.     For example, the Plaintiff has prominently and repeatedly paid to display the Rosendale Trademark on the Association for Preservation Technology – International's Bulletin.  <u>See</u> attached Exhibit 4.

24.     The Plaintiff's and the Defendants' natural cement products compete directly.

25.     For example, the Plaintiff's "Rosendale 10C *Natural Cement* and *Quick Setting Natural Cement"* conform to the requirements of ASTM C10/10M-14.

26.     The Defendants' products purport to likewise conform to the requirements of ASTM C10/10M-14.

27.     The Plaintiff's Rosendale Natural Cement Products® are manufactured in the United States of America from 100% American natural cement.

28.     The Plaintiff's material is extracted from historic sources, as originally used in construction of thousands of American and Canadian buildings and structures in the 19th and 20th Centuries.

29.     The Plaintiff has sold and/or offered its goods for sale in interstate and intrastate commerce, including commerce in New York State and in this Judicial District.

### HISTORICAL ORIGIN OF THE PLAINTIFF'S ROSENDALE NATURAL CEMENT PRODUCTS TRADEMARK

30.     High quality natural cement was used in the construction of many of the United States' most important landmarks, including the pedestal of the Statue of Liberty, Federal Hall, and one of the wings of the United States Capitol building.

31.     For example, the Brooklyn Bridge opened on May 24, 1880, its concrete-filled caissons and granite superstructure held together by natural cement.

32.     More than a century ago, the term "Rosendale cement" was used to refer to a type of natural cement that was produced from argillaceous limestone, but is a term that has had "different definitions at different times."  See Wikipedia entry attached as Exhibit 5.

33.     The term "Rosendale cement" was originally coined to describe natural cement that was first discovered and best developed in Rosendale, NY.

34.     For example, the official Bulletin of the New York State Museum, Lime and Cement Industries of New York, published by the University of the State of New York 1901, states that the origin of the name is the locality where the natural rock cement beds were "first discovered and best developed" in the United States:

> terials, which they regard as coequal with Portland.  The name, Rosendale, is often given to these cements, because it is the name of the locality at which the natural rock cement beds were first discovered and are best developed in the United States.

35.     Because of natural cement's general reputation for high quality, in the latter half of the 19th Century and early half of the 20th Century, "Rosendale cement" was often and frequently used as a term referring to any natural hydraulic cement mined from locations both inside and outside of Rosendale NY.

36.     The book Hydraulic Cement: Its  Properties, Testing and Use, written by Frederick P. Spalding, Professor of Civil Engineering of the University of Missouri and Member of the American Society of Civil Engineers, published by John Wiley & Sons in 1903, states that the term "*Rosendale Cement*" has "frequently been given a general meaning" and is synonymous with "natural" and "American" to include "all natural cements":

> **The term *Rosendale Cement* has frequently been given a general meaning and used as synonymous with natural and American to include all natural cements.**

37.     The book A Treatise on Masonry Construction, written by Ira Osborn Baker, Professor of Civil Engineering at the University of Illinois, published by John Wiley & Sons in 1890, lamented that the words "natural," "American" and "Rosendale"

were frequently used interchangeably, leading to "great diversity" and "some confusion," with that author proposing that the term "ROSENDALE" should be used to describe all natural cement in recognition of where it was "first made" (emphasis in original):

> land, off the south coast of England. There is a great diversity and some confusion in the names employed to designate that cement which above is called Rosendale. The terms "natural," "American," and "Rosendale" are frequently used. *It is here proposed to call this cement* ROSENDALE, *from the place—Rosendale, Ulster Co., N. Y.—where it was first made.*

38. Historical catalogs listing suppliers of "Rosendale cement" reflect that many such suppliers were mining their raw material from locations located in Pennsylvania and elsewhere in New York, not the town of Rosendale NY specifically.

39. For example, the book Directory of American Cement Industries and Hand-Book for Cement Users, published by Municipal Engineering Company in 1902, details a number of suppliers using the "ROSENDALE" brand located in Catasauqua, Pennsylvania; Reading, Pennsylvania; and Nazareth, Pennsylvania, respectively, as well as Howe's Cave, New York:

> 386    DIRECTORY OF AMERICAN CEMENT INDUSTRIES.
>
> IMPROVED ROSENDALE BRAND NATURAL HYDRAULIC CEMENT.—
>     The Hercules Cement Co., Manufacturers, Catasauqua, Pa.
>     Houston & Co., Sales Agents, 26 Cortlandt street, New York.
>     Bryant & Kent, Sales Agents, Boston, Mass.
>     Thos. Robinson & Co., Sales Agents, Philadelphia, Pa.
> IMPROVED ROSENDALE BRAND NATURAL HYDRAULIC CEMENT.—
>     Reading Cement Co., Manufacturers, Reading, Pa.
>
>         *       *       *

Lequola Portland Cement Co., Manufacturers, Cleveland, Ohio.

**IXL BRAND ROSENDALE NATURAL HYDRAULIC CEMENT.—**
**Phoenix Cement Co., Manufacturers, Nazareth, Pa.**
Wm. G. Hartranft Co., Sales Agents, Broad and Chestnut streets,
    Philadelphia, Pa.
Eureka Cement Co., Sales Agents, 1 Madison avenue, New York.
Thos. Robinson & Co., Sales Agents, Philadelphia, Pa.

\*      \*      \*

The Cummings Cement Co., Manufacturers, Akron, N. Y.
**ROSENDALE NATURAL HYDRAULIC CEMENT.—**
        **Heldenberg Cement Co., Manufacturers, Howe's Cave, N. Y.**
        Chas. H. Ramsey, Sales Agent, 38 State street, Albany, N. Y.

40.    Additionally, the official <u>Bulletin of the New York State Museum, Lime and Cement Industries of New York</u>, published by the University of the State of New York in 1901, lists a number of companies using the name "Rosendale" as part of their cement brand, with their mines located in Coplay, Pennsylvania; Howe Cave, NY, Akron, NY, and elsewhere:

| | |
|---|---|
| Rosendale *a* . . . . . . . . . . . . . . . . . . . . . . . . | Ulster co. N. Y. . . . . . . . . . . . . |
| Union Akron . . . . . . . . . . . . . . . . . | Akron N. Y. . . . . . . . . . . . . . . . |
| Union Rosendale . . . . . . . . . . . . . . . | . . . . . . . . . . . . . . . . . . . . . . . . . . . |

*a* Brand not stated.

| | |
|---|---|
| Commercial Rosendale . . . . . . . . . . | Coplay Pa. . . . . . . . . . . . . . . . . |
| Helderberg Rosendale . . . . . . . . . . . . | Howe Cave N. Y. . . . . . . . . . . . . |
| Norton's . . . . . . . . . . . . . . . . . . . | Binnewater N. Y. . . . . . . . . . . . . |
| Union Akron . . . . . . . . . . . . . . . . . | Akron N. Y. . . . . . . . . . . . . . . . |
| Union Rosendale . . . . . . . . . . . . . . . | . . . . . . . . . . . . . . . . . . . . . . . . . . . |

41.    That same book analyzed the source of cement material, concluding that one natural cement production called "Rosendale" originated from a mine located in Howes Cove, NY, not Rosendale NY:

**14. Analyses.** — Table 3 gives the results of a number of analyses of natural cement, compiled from various sources.

### TABLE 3

#### Analyses of Natural Cements

| Brand. | Locality. | Silica. | Alumina. | Iron Oxide. | Lime. | Magnesia. | Potash and Soda. | Carbonic Acid, Water, and Loss. |
|---|---|---|---|---|---|---|---|---|
| Bonneville Improved . | A | 30.40 | 10.36 | 2.60 | 52.12 | 0.21 | .... | 3.07 |
| Round Top . . . . | B | 28.02 | 10.20 | 8.80 | 44.48 | 1.00 | 0.50 | 7.00 |
| Cumberland . . . . | C | 28.30 | 10.12 | 4.42 | 49.60 | 3.76 | .... | .... |
| Double Star . . . . | D | 23.32 | 6.99 | 5.97 | 53.96 | 7.76 | .... | 2.00 |
| Black Diamond . . . | E | 22.54 | 8.24 | 2.14 | 42.31 | 5.39 | 2.82 | .... |
| Fern Leaf . . . . | F | 26.40 | 6.28 | 1.00 | 45.22 | 9.00 | 4.24 | 7.86 |
| Hulme . . . . . | G | 25.28 | 7.85 | 1.43 | 44.65 | 9.50 | 4.25 | 7.04 |
| Star . . . . . . | H | 23.29 | 5.96 | 2.16 | 41.28 | 15.39 | 1.98 | .... |
| Norton . . . . . | I | 27.08 | 7.28 | 1.70 | 37.59 | 15.00 | 7.96 | 2.49 |
| Rosendale . . . . . | J | 26.54 | 5.89 | | 45.30 | 17.06 | | |
| Brooklyn Bridge . . . | K | 34.59 | 7.16 | 2.11 | 34.49 | 19.77 | ... | 3.08 |
| Hoffman . . . . . | L | 27.30 | 7.14 | 1.80 | 35.68 | 18.00 | 6.80 | 2.88 |
| Lawrence . . . . . | M | 29.77 | 10.43 | | 34.54 | 21.85 | 3.63 | 4.43 |
| Newark & Rosendale . | N | 28.71 | 5.88 | 3.60 | 27.00 | 30.00 | .... | 3.52 |
| Clarks Utica . . . . | O | 34.06 | 9.10 | 1.00 | 30.24 | 18.00 | 6.16 | 4.54 |
| Milwaukee . . . . | P | 23.16 | 6.33 | 1.71 | 36.08 | 20.38 | 5.27 | 7.07 |
| Mankato . . . . . | Q | 27.70 | 7.06 | 1.86 | 37.00 | 22.63 | .... | 2.46 |
| James River . . . . | R | 49.53 | 11.29 | | 25.15 | 13.77 | .... | 0.26 |
| Howard . . . . . | S | 22.58 | 7.23 | 3.35 | 48.18 | 15.00 | .... | 3.66 |
| Union Akron . . . . | T | 17.14 | 7.61 | 2.00 | 36.83 | 25.09 | 3.64 | .... |
| Akron Star . . . . | U | 20.40 | 6.22 | 2.56 | 40.64 | 25.80 | .... | 1.47 |
| Buffalo . . . . . | V | 16.48 | 4.40 | 2.00 | 39.20 | 26.52 | 1.85 | 6.80 |

The localities indicated by letters are as follows: —
A, Siegfried, Pa.; B, Hancock, Md.; C, Cumberland, Md.; D, Fort Scott, Kan.; E, F, and G, Louisville, Ky.; H, Speeds, Ind.; I, K, L, M, and N, Ulster Co., N. Y.; J, Howes Cove, N. Y.; O, Utica, Ill.; P, Milwaukee, Wis.; Q, Mankato, Minn.; R, Locker, Virginia; S, Cement, Ga.; T and U, Akron, N. Y.; V, Buffalo, N. Y.

42.     Many other reliable contemporaneous and modern sources, as well, note that the term "Rosendale cement" was frequently and regularly used to describe natural cement that was not mined or quarried from mines located within Rosendale, NY.

43.     Natural cement mined from the Rosendale, NY area was originally produced from dolostone extracted from the Late Silurian Rondout formation.

44.     This natural formation included many states and regions outside of Rosendale, NY, where rock for producing natural cement called "Rosendale cement" was frequently mined.

45.     While cement from these mines was extremely popular for the foundation of buildings (*e.g.* Statue of Liberty, Capitol Building, Brooklyn Bridge) and lining of water pipes, its relatively long curing time made it unpopular after World War I in the

construction of highways and bridges, and many states and construction firms turned to the use of Portland cement.

46.     In the final year of the 19th century, Rosendale NY's cement industry peaked, producing nearly 10 million barrels a year.

47.     But as the 20th century began, builders needed even stronger cement, and a newer product called Portland cement rapidly became more popular.

48.     During most of the 151-year span of the natural-cement industry, Rosendale NY's mines produced nearly 50 percent of all the natural cement manufactured in North America.

49.     But in just a decade, from 1900 to 1910, the two products essentially exchanged market share.

50.     Natural cement production in the U.S. shrank from 10 million barrels annually to one million, while Portland cement production grew from one million barrels to more than 12 million by 1910.

51.     Natural cement held on for a while as a specialty product, but by 1970, over forty-five (45) years ago, Rosendale's Century Cement Manufacturing Company, and the Fort Scott Hydraulic Cement Company (KS), the last natural cement works in North America, closed.

52.     Most, if not all, of the original mines in Rosendale NY are partially flooded.

53.     No substantial amount of cement from Rosendale, NY has been actively mined since approximately 1970.

54.     Mr. Kenneth L. Uracius admitted that all the original Rosendale NY mines had closed by the 1970's, during his prior sworn deposition:

```
16        Q    So, you read those books?
17        A    Yes.
18        Q    And both of them identified Rosendale as a
19   location of quarries where natural cement could be
20   mined?
21        A    Yes.
22        Q    And the next sentence in that paragraph
23   six says, during the 19th and 20th centuries,
24   Rosendale was home to numerous natural cement
25   manufacturers?
```

```
                                              Page 64
1        A    Correct.
2        Q    And those manufacturers closed their doors
3   in the 1970's?
4        A    Yes.
5        Q    So, they hung on until the '70s?
6        A    One did.
```

55.     The Defendants' website links to the Century House Historical Society's website as an "Affiliate," which openly acknowledges many of the specific historical facts described herein, also noting: "It should be noted that the term "Rosendale cement" was sometimes applied to "natural" and/or "hydraulic" cement from areas other than Rosendale, NY."  See Exhibit 6.

56.     The Century House's Historical website also explains how the original mines in Rosendale NY closed by 1970.  Id.

57.     The Rosendale NY community has largely adapted to the loss of the cement mining industry.  Id.

58.     A few companies have recognized the nostalgic value of this lost bit of Americana.

59.     For example, a third party opened a restaurant called The Rosendale Cement Company in a refurbished 1860 brothel.

60.     That restaurant is now closed, but this third party still owns the domain name *http://www.RosendaleCement.com.*

61.     Also recognizing the nostalgic value of this lost bit of Americana in the field of modern natural cement products, the Plaintiff successfully coined the term ROSENDALE NATURAL CEMENT PRODUCTS®, as used in connection with its own high quality, American-made natural cement products.

62.     The Plaintiff coined the term ROSENDALE NATURAL CEMENT PRODUCTS in October 2004 as an intentional homage to the high quality American-made natural cement of a century ago.

63.     The Plaintiff's products sold under the Rosendale Trademark have always contained at least some material originally mined from a location within Rosendale NY, although as discussed herein, the term "Rosendale cement" was frequently used to describe a wide variety of natural American cements.

64.     Even if the Plaintiff's natural cement products contained absolutely no raw material mined from a location in the town of Rosendale, NY, the Plaintiff's trademarked term "ROSENDALE NATURAL CEMENT PRODUCTS" can be fairly used by the

Plaintiff, and owned exclusively by the Plaintiff, to identify and brand the Plaintiff's natural cement products.

65.     As described herein and elsewhere, the term "Rosendale cement" has not consistently been used to reflect that the raw cement materials were wholly quarried from mines located within Rosendale, NY.

66.     Consequently, consumers in the relevant industry did not, and do not reasonably expect that the Plaintiff's ROSENDALE NATURAL CEMENT PRODUCTS® actually originate from cement rock wholly mined in the town of Rosendale, New York.

### Defendant Freedom Cement LLC

67.     Freedom Cement LLC is a domestic limited liability company organized under the laws of Massachusetts.

68.     Freedom Cement's primary place of business is 52 Allen Road, Brookfield, MA 01506.

69.     Freedom Cement manufactures and distributes cement and cement-based products to customers in this Judicial District, in New York State and elsewhere.

### Defendant Stone & Lime Imports, Inc.

70.     Stone & Lime Imports, Inc. is a domestic, for-profit corporation organized under the laws of Massachusetts.

71.     Stone & Lime's principal place of business is 52 Allen Road, Brookfield, MA 01506.

72.     Stone & Lime manufactures and distributes cement and cement-based products to customers in this Judicial District, in New York and elsewhere.

73.     On information and belief, Patricia Pelchat and/or Kenneth L. Uracius are Officers and/or Directors of both Freedom Cement and Stone & Lime Imports.

74.     Mr. Kenneth L. Uracius was a founder of Freedom Cement LLC.

75.     On information and believe, Mr. Kenneth L. Uracius is a member of Defendant Freedom Cement LLC.

### The Defendants' Infringing and Misleading Conduct

76.     Mr. Kenneth L. Uracius worked with the Plaintiff Edison Coatings, through the company Stone & Lime Imports, Inc., for several years until June, 2008.

77.     Long after the Plaintiff's first use of its Rosendale Trademark in commerce, the Defendants began using the term "ROSENDALE CEMENT" in commerce, in connection with competing natural cement products.

78.     On information and belief, the Defendants used an excavating contractor to remove raw cement rock material from a mine shaft controlled by third party Iron Mountain, Inc., to claim that they are using "authentic Rosendale cement" as a deliberate mechanism to infringe upon the Plaintiff's ROSENDALE NATURAL CEMENT PRODUCTS® Trademark.

79.     Specifically, on information and belief, third party Iron Mountain, Inc. currently owns an "old mine that has been refurnished into a high-security vault," located at 694 Binnewater Road, Rosendale NY.

80.     One of the Defendants' websites, which is fully accessible and visible to consumers from New York and this Judicial District, *http://www.HistoricMortars.com,* describes the Defendants as having "mines/quarries in Rosendale NY."

81.     On information and belief, the Defendants do not own any mines or quarries located in Rosendale NY, but are extracting raw cement material under a written contract with third party Iron Mountain, Inc.

82.     During a sworn deposition taken on or about June 9, 2010 in an arbitration proceeding related to contract claims, Mr. Kenneth L. Uracius openly admitted that the term "ROSENDALE CEMENT" could mean "anything that was produced with natural cement in it":

```
21          Q      What do you understand the Rosendale
22    Natural Cement name to be?
23          A      Anything that was produced with natural
24    cement in it.
```

83.     Mr. Uracius also openly admitted that Defendant Stone & Lime Imports does not own the trade name "Rosendale Natural Cement", and has not sought to trademark that term because Michael Edison, the President of the Plaintiff, had done so:

```
 9          Q      Did you ever trademark or copyright the
10    name Rosendale Natural Cement?
11          A      No.
```

                        *       *       *

14      Q    When you refer to Rosendale Natural Cement

15  trade name, are you referring to the Rosendale

16  Natural Cement trade name that is owned by Edison

17  Coatings or registered under Edison Coatings?

18      A    I don't know.

19      Q    You admit that Stone & Lime Imports does

20  not own the trade name Rosendale Natural Cement?

21      A    Yes.

22      Q    Yes, you admit that?

23      A    Yes.

*     *     *

20      Q    Likewise, did you ever decide to try and

21  pursue registration of a trademark or trade name for

22  Rosendale Natural Cement?

23      A    No.

24      Q    And was there a reason why you decided not

25  to do that?

Page 136

1      A    Yeah, Michael was doing that.

2      Q    And how did you know Michael was doing it?

3      A    Because that's when we discussed this, it

4  was brought up.

*     *     *

16      Q    Is there a reason why you decided not to

17  do it?

18      A    No.

18

84. The "Michael" referred to by Mr. Uracius on page 136 of his sworn deposition was referring to Michael Edison, the President of the Plaintiff Edison Coatings, Inc.

85. At his sworn deposition, Mr. Uracius also expressed no concern or belief that the term "ROSENDALE CEMENT" needed to be restricted to mines located in Rosendale, NY.

86. Indeed, at the time he was working with the Plaintiff, he had identified mines in Kentucky, Georgia and Virginia:

```
25        Q     Would that be restricted just to natural
                                                    Page 131
 1   cement made or natural cement products made with
 2   natural cement raw materials from the Rosendale
 3   quarry or other quarries where natural cement raw
 4   materials were contained?
 5        A     At this time it was the Rosendale Natural
 6   Cement quarry -- the Rosendale Natural Cement was
 7   interchangeable with all the quarries.
 8        Q     All right.  But the only quarry that you
 9   were extracting raw material from was in Rosendale,
10   New York?
11        A     Correct.
12        Q     Because that's the only one you had rights
13   to by virtue of your agreement with Iron Mountain?
14        A     Correct.
15        Q     Had you identified other quarries?
16        A     Yes.
17        Q     Where were they?
18        A     Kentucky, Georgia, Virginia, I've
19   identified a bunch of them.
```

87.     On or about February 5, 2015, the Association for Preservation Technology Northeast Chapter Annual Symposium in New York City was held at St. Bartholomew's Episcopal Church in this Judicial District.

88.     The Defendant Freedom Cement LLC was a paid sponsor of this event. See attached Exhibit 7.

89.     During that Symposium in this Judicial District, several instances of actual consumer confusion occurred as a result of the Defendants' conduct, as complained of herein.

90.     During that Symposium in this Judicial District, several potential purchasers of the Plaintiff's cement products mistakenly believed that Defendant Freedom Cement LLC was the owner and/or source of Edison Coatings' registered trademark ROSENDALE NATURAL CEMENT PRODUCTS®.

91.     In a deliberate attempt to confuse consumers and defraud the public, the Defendants create, promote, and advertise their products as though they were authorized by the Plaintiff.  *See, e.g*., Exhibit 8.

92.     For example, the Defendants' website uses the term "CENTURY BRAND ***ROSENDALE CEMENT***" in the logo that is depicted below in Figure 4 (emphasis added):



**FIG. 4**

93.     Freedom Cement swore to the Trademark Office that its first use in interstate commerce of the "CENTURY BRAND" was at least as early as 2014.

94.     The specimen of use offered to the trademark office by Freedom Cement LLC was a screenshot of a website dated in 2014.

95.     The domain name *http://www.HistoricMortars.com* was not registered until October 2014.

96.     The Facebook page for "Century Brand Rosendale Cement" was not created until October 2014.

97.     Defendant Freedom Cement LLC swore to the USPTO that it was using the mark in connection with "....***Rosendale cement***...."

98.     The Defendant Freedom Cement LLC did not reveal to the USPTO that it was infringing upon the Plaintiff's ROSENDALE NATURAL CEMENT PRODUCTS Trademark.

99.     The Defendant Freedom Cement LLC did not reveal to the USPTO that its principal Mr. Uracius had previously testified under oath that he understood the term "Rosendale cement" to mean "anything that was produced with natural cement in it."

100.    The Defendants are currently using the term "ROSENDALE CEMENT" in a manner likely to cause confusion and unfairly compete with the Plaintiff.

101.    On or about March 6, 2015, the Plaintiff placed the Defendants on notice that their conduct was infringing upon the Plaintiff's trademark rights in the ROSENDALE NATURAL CEMENT PRODUCTS® trademark.  See attached Exhibit 9.

102.    Rather than respond to, or comply with the Plaintiff's reasonable requests, Freedom Cement LLC filed a Cancellation Proceeding in the United States Patent and Trademark Office, seeking to cancel the Plaintiff's trademark registration.  See attached Exhibit 10.

103.    In that Notice of Cancellation, Freedom Cement LLC alleged that the trademark that the Plaintiff had revived was "deceptive and primarily geographically deceptively misdescriptive."

104.    Freedom Cement's sole argument was essentially that, because the Plaintiff's natural cement products do not originate from cement mines located within the town of Rosendale, New York, the Plaintiff's trademark should be canceled.

105.    On information and belief, in 2012, an employee of one of the Defendants' intentionally edited the entry for "Rosendale" on *Wikipedia.org* to deliberately remove all references to the Plaintiff, and instead substitute the Defendant's name.

106.    On information and belief, on or about May 30, 2012, using the anonymous screenname "Gypsum Miner," the Defendants changed the statement that had

appeared on *Wikipedia.org*:  "In 2004 limited cement mining resumed in Rosendale, and

Rosendale natural cement is again being produced.  Edison Coatings, Inc. in Plainville,

Connecticut, is producing natural cement for use in historic restoration projects." to read:

"In 2004 limited cement mining resumed in Rosendale, and Rosendale natural cement is

again being produced.  Freedom Cement LLC, in North Brookfield, MA, is producing

natural cement for use in historic restoration projects."  *See* attached Exhibit 11.

107.    The Defendants' infringing conduct, unfair competition, and the consumer

confusion deliberately and intentionally created by the Defendants, must be brought to a

halt by this Court.

### FIRST CLAIM FOR RELIEF

**Federal Trademark Infringement In Violation of Section 32 of the Lanham Act**

**(15 U.S.C. § 1114)**

108.    Edison Coatings hereby repeats each and every allegation set forth in

paragraphs 1 to 107 above as if fully set forth herein.

109.    Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), prohibits any

person from using in commerce, without the consent of the registrant:

> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in
> connection with the sale, offering for sale, distribution, or advertising of any
> goods or services on or in connection with which such use is likely to cause
> confusion, or to cause mistake, or to deceive . . .

110.    The Plaintiff's Rosendale Trademark is federally registered on the

Supplemental Register.

111.    The Rosendale Trademark is distinctive and associated in the mind of the

relevant consuming public with the Plaintiff Edison Coatings.

112.    Additionally, based on Edison Coatings' extensive advertising, sales, and the popularity of its products, the Rosendale Trademark has acquired secondary meaning so that the public associates the ROSENDALE NATURAL CEMENT PRODUCTS® Trademark with Edison Coatings.

113.    The Defendants have used unauthorized reproductions of the Rosendale Natural Cement Trademark in connection with the advertising, sale, offering for sale and/or distribution of competing goods for its own financial gain.

114.    Edison Coatings has not authorized the Defendants' use of the ROSENDALE NATURAL CEMENT PRODUCTS® Trademark.

115.    The Defendants' unauthorized use of the Rosendale Trademark on or in connection with the advertising and sale of goods constitutes the use of Plaintiff's registered marks in commerce.

116.    The Defendants' unauthorized use of the Rosendale Trademark is likely to cause confusion, mistake, or deception; cause the public to believe that the Defendants' products emanate or originate from Edison Coatings when they do not, or that Edison Coatings has authorized, sponsored, approved or otherwise associated itself with the Defendant or their products bearing the Rosendale Trademark.

117.    The Defendants' unauthorized use of the Rosendale Trademark has resulted in the Defendants unfairly and illegally benefitting from Edison Coatings' goodwill.  This has caused substantial and irreparable injury to the public, Edison Coatings, the ROSENDALE NATURAL CEMENT PRODUCTS® Trademark, and the substantial goodwill represented thereby.

118.    Accordingly, the Defendants have engaged in trademark infringement in violation of 15 U.S.C. § 1114.

119.    The Defendants' acts have caused, and will continue to cause, irreparable injury to Edison Coatings.

120.    Edison Coatings has no adequate remedy at law and is thus entitled to damages in an amount yet to be determined.

121.    The Defendants' conduct in selling infringing goods bearing the unauthorized Rosendale Trademark is willful and intentional, and thus this constitutes an exceptional case.

**SECOND CLAIM FOR RELIEF**

**False Designation of Origin**
**In Violation of Section 43(a) of the Lanham Act**

**(15 U.S.C. § 1125(a))**

122.    Edison Coatings hereby repeats each and every allegation set forth in paragraphs 1 to 121 above as if fully set forth herein.

123.    Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) provides, in relevant part, that:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(1)(a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

124.    By making unauthorized use, in interstate commerce, of the Rosendale Trademark, the Defendants have used a "false designation of origin" that is likely to

cause confusion, mistake or deception as to the affiliation or connection of the Defendants with Edison Coatings and as to the origin, sponsorship, association or approval of the Defendants' services and goods by Edison Coatings, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

125.    The Defendants' acts constitute the use in commerce of false designations of origin and false and/or misleading descriptions or representations, tending to falsely or misleadingly describe and/or represent the Defendants' products as those of Edison Coatings, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

126.    The Defendants' wrongful acts will continue unless and until enjoined by this Court.

127.    The Defendants' acts have caused and will continue to cause irreparable injury to Edison Coatings.  Edison Coatings has no adequate remedy at law and is thus damaged in an amount yet to be determined.

128.    The Defendants' conduct in selling infringing goods is willful and intentional.

### THIRD CLAIM FOR RELIEF

**Deceptive Acts and Practices Unlawful In Violation of the New York General Business Law**

**(N.Y. Gen. Bus. Law §§ 349 and 350)**

129.    Edison Coatings hereby repeats each and every allegation set forth in paragraphs 1 to 128 above as if fully set forth herein.

130.    New York General Business Law, Section 349 states, in relevant part, that: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

131.    New York General Business Law, Section 350 states, in relevant part, that: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

132.    Through their importation, advertisement, distribution, offer to sell and sale of unauthorized goods bearing the Rosendale Trademark, the Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

133.    The Defendants' deceptive acts or practices, as described herein, are materially misleading.  Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom the Defendants have directed their marketing activities, and Edison Coatings has been injured thereby.

134.    By the acts described above, the Defendants have willfully engaged in deceptive acts or practices in the conduct of business and furnishing of services in violation of Section 349 and 350 of the New York General Business Law.

135.    The Defendants' acts have caused, and will continue to cause, irreparable injury to Edison Coatings.  Edison Coatings has no adequate remedy at law and is thus damaged in an amount not yet determined.

## FOURTH CLAIM FOR RELIEF

### Trademark Infringement In Violation of New York State Common Law

136.    Edison Coatings hereby repeats each and every allegation set forth in paragraphs 1 to 135 above as if fully set forth herein.

137.    The Plaintiff owns all right, title and interest in and to the Rosendale Trademarks as described above, including all common law rights in the Rosendale Trademarks.

138.    The products sold by the Defendants incorporate imitations of Edison Coatings' common law trademarks. The Defendants' use of Edison Coatings' trademarks is unauthorized, and is likely to cause consumer confusion.

139.    By the acts described above, the Defendants have engaged in trademark infringement in violation of the common law of the State of New York.

140.    The Defendants' acts have caused, and will continue to cause, irreparable injury to Edison Coatings.  Edison Coatings has no adequate remedy at law and is thus damaged in an amount not yet determined.

### FIFTH CLAIM FOR RELIEF

### Unfair Competition In Violation of the New York Common Law

141.    Edison Coatings hereby repeats each and every allegation set forth in paragraphs 1 to 140 above as if fully set forth herein.

142.    The Defendants have palmed off their goods as Edison Coatings goods, improperly trading upon the Plaintiff's goodwill and valuable rights in and to the Rosendale Trademarks.

143.    The Defendants have committed the above alleged acts willfully, and in conscious disregard of Edison Coatings' rights, and Edison Coatings is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of New York in an amount sufficient to punish, deter and make an example of the Defendants.

144.    By the acts described above, the Defendants have engaged in unfair competition in violation of the common law of the State of New York.

145.    The Defendants' acts have caused and will continue to cause irreparable injury to Edison Coatings.  Edison Coatings has no adequate remedy at law and is thus damaged in an amount yet to be determined.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays:

1.  For a **FINAL JUDGMENT** that:

    a.  The Defendants have engaged in trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    b.  The Defendants have violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

    c.  The Defendants have engaged in deceptive acts and practices unlawful in violation of Sections 349 and 350 of the New York General Business Law;

    d.  The Defendants have engaged in trademark infringement in violation of the common law of the State of New York;

    e.  The Defendants have engaged in unfair competition in violation of the common law of the State of New York; and

    f.  That the above acts were done willfully, and/or intentionally.

2.  For entry of an **ORDER** permanently enjoining and restraining the Defendants, and their officers, agents, servants, employees and attorneys and all those in active concert or participation with any of them, from:

    a.  Using any reproduction, counterfeit, copy or colorable imitation of the Rosendale Trademark (as defined herein) for and in connection with

any goods or their packaging not authorized by Edison Coatings;

b. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure Plaintiff's business reputation or dilute the distinctive quality of the Rosendale Trademark;

c. Using any false description or representation, including words or other symbols tending falsely to describe or represent Defendants' unauthorized goods or their packaging as being those of Edison Coatings, or sponsored by or associated with Edison Coatings, and from offering such goods into commerce;

d. Further infringing the Rosendale Trademark by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise disposing of any products or their packaging not authorized by Edison Coatings that bear any simulation, reproduction, counterfeit, copy or colorable imitation of the Rosendale Trademark;

e. Using any simulation, reproduction, counterfeit, copy or colorable imitation of the Rosendale Trademark in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products or their packaging in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Edison Coatings, or to any goods sold, manufactured, sponsored or approved by, or connected with Edison Coatings;

f.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which may or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, or sold by the Defendants are in any manner associated or connected with Edison Coatings, or are sold, manufactured, licensed, sponsored, approved or authorized by Edison Coatings;

g.  Infringing the Rosendale Trademark, or Plaintiff's rights therein, or using or exploiting the Rosendale Trademark;

h.  Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe the Rosendale Trademark; and

i.  Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

3.  For an entry of an **ORDER** directing that the Defendants deliver up for destruction to Edison Coatings all unauthorized products, advertisements and packaging in their possession or under their control bearing any of the Rosendale Trademark or any simulation, reproduction, counterfeit, copy or

colorable imitation thereof, and all plates, molds, matrices and other means of production of same pursuant to 15 U.S.C. § 1118.

4.  For entry of an **ORDER** requiring the Defendants to disseminate corrective advertisements in a form approved by the Court to acknowledge their violations of the law hereunder, and to ameliorate the false and deceptive impressions produced by such violations.

5.  For all such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any products or associated packaging manufactured, sold or otherwise circulated or promoted by the Defendants are authorized by Edison Coatings or related in any way to Edison Coatings' products.

6.  For an assessment of the **ACTUAL DAMAGES** suffered by Edison Coatings, trebled, and an award of all profits that Defendants have derived from using the Edison Coatings Trademarks, trebled, as well as costs and attorneys' fees to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117.

7.  For **COSTS OF SUIT**, and for such other and further relief as the Court shall deem appropriate.

**A TRIAL BY JURY IS DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a jury trial on all triable issues raised by this Complaint.

April 8, 2015                                        Respectfully Submitted,


Joseph C. Gioconda (JG4716)
Joseph M. Forgione (JF8630)
THE GIOCONDA LAW GROUP PLLC
One Penn Plaza, 36th Floor
New York, NY 10119-0002
Telephone: (212) 786-7549
Facsimile: (888) 697-9665
Joseph.Gioconda@GiocondaLaw.com

Bell Plaza, Suite 607
42-40 Bell Boulevard
Bayside, NY 11361
Telephone: (718) 423-3610

*Attorneys for Plaintiff*
*Edison Coatings Inc.*

## SWORN VERIFICATION

State of New York      :

                                :     ss:

City of New York,       :

County of Queens      :

I, Michael Edison, declare under penalty of perjury as follows:

1.  I am the President of the Plaintiff Edison Coatings, Inc.

2.  I have personal knowledge of the Plaintiff and its activities, including those set out in the foregoing *Complaint* and its attached exhibits, and if called to testify, I would competently testify as to the matters stated herein.

3.  I hereby verify under penalty of perjury under the laws of the United States of America that the factual statements about the Plaintiff contained herein are true and correct.

Michael Edison

Sworn to and subscribed before me this 8th day of April 2015

NOTARY PUBLIC

NICHOLAS J. SCIARRINO
Notary Public, State of New York
No. 02SC6196531
Qualified in Nassau County
Commission Expires July 20, 2016

34